**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AKINTOYE LAOYE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>THE UNITED STATES OF AMERICA, *et al.*,<br><br>　　　　　Defendants. | Civil Action No. 14-05195 (GC) (DEA)<br><br>**MEMORANDUM & ORDER** |

**CASTNER, U.S.D.J.**

**THIS MATTER** comes before the Court upon *pro se* Plaintiff Akintoye Laoye's "Emergency Motion," which asks the Court to find that an affidavit of merit ("AOM") is not required for Plaintiff's Federal Tort Claims Act ("FTCA") claims against Defendant The United States of America (the "USA"). (*See* ECF No. 133.) The parties filed correspondence related to Plaintiff's request (*see* ECF Nos. 134, 135, 138, 139), and having carefully considered the parties' submissions, the Court issues this Memorandum & Order without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78(b) and Local Civil Rule 78.1(b).

**I.　　BACKGROUND**

On March 17, 2022, Plaintiff (who was then-represented by *pro bono* counsel for the limited purposed of his amended complaint) filed his Fourth Amended Complaint against the USA and other Defendants asserting claims for excessive use of force, deliberate indifference to Plaintiff's medical needs, harsh pretrial conditions, equal protection violations, and claims under the Federal Tort Claims Act stemming from Plaintiff's arrest and related efforts to remove him to Nigeria. (*See generally* ECF No. 81.)

On July 27, 2022, the USA and other federal Defendants moved to dismiss, and the Court issued an Opinion and Order granting in part and denying in part the motion. (ECF Nos. 106, 123, 124.) As a result, Plaintiff's remaining claims against the USA are Counts V and VI, brought pursuant to the FTCA. (ECF No. 81 ¶¶ 126-38.)

The USA answered the Fourth Amended Complaint on March 27, 2023, and in its answer, the USA demanded that, pursuant to N.J. Stat. Ann. §§ 2A:53A-26, *et seq.*, "Plaintiff produce an Affidavit of Merit within the time specified therein." (ECF No. 130 at 19.)

On April 3, 2023, Plaintiff filed a request for an extension of time to submit an AOM. (ECF No. 131.) Plaintiff wrote that the extension was necessary because he is in Nigeria and he needed the time to "find[] a specialist in [N]ew [J]ersey to [complete] the affidavit of merit in accordance with [N]ew [J]ersey law." (*Id.*) The USA did not oppose.

On May 11, 2023, the Court found good cause and granted Plaintiff's request for a 60-day extension, giving Plaintiff until July 25, 2023, to serve an AOM on the USA. (ECF No. 132.)

Two weeks later, on May 24, 2023, Plaintiff filed the present "Emergency Motion," asking the Court to find "that an affidavit of merit is actually not required in th[e] current case." (ECF No. 133.) Plaintiff argues that because his FTCA claims are based on a theory of vicarious liability for the acts of the USA's agents, an AOM is not required. (*Id.* at 1-2.) Plaintiff writes: "[T]his case . . . deals with . . . [U.S. Immigrations and Customs Enforcement ('ICE')] officers who interfered with [Plaintiff's] treatment, denied him treatment for painful reoccurring cyst and painful large groin hernia, [involuntary] full body spasms, and ignored complaints about continuous abuse and denial of medical treatment, ignored medical documentation . . . in regards to a jaw surgery and removal of damaged wisdom teeth." (*Id.* at 3.) Because these underlying acts were "not committed by . . . a 'licensed person,'" as defined under New Jersey law, and

because "the [U]nited [S]tates is not a licensed entity," Plaintiff submits that an AOM should not be required of him. (*Id.* at 6.)

Plaintiff also noted that he was "working on" obtaining an AOM but that he was struggling because "most of the experts he ha[d] reached out to . . . ha[d] asked to see him to do tests and see the extent of damage." (*Id.*) Plaintiff wrote that his situation is "exceptional," because he has been removed by the USA to Nigeria and his injuries resulted from this removal, and his difficulty in securing an AOM is in part due to the fact that he can no longer enter the USA. (*Id.* at 8.) Plaintiff asked for a "*Ferreira* conference" to discuss his concerns.[1] (*Id.*)

On June 2, 2023, the USA responded to Plaintiff's motion. (ECF No. 134.) It took the position that the motion "is premature" because the time to submit an AOM has not yet expired, and the USA asked that the Court wait until July 26, 2023, to see if Plaintiff "serve[s] an affidavit of merit and propose a briefing schedule on the . . . issue if he does not do so." (*Id.*) The USA maintained that this would "promote the efficient management of this case." (*Id.*)

Plaintiff replied on June 5, 2023, arguing that his motion raised "important issues that need to be [decided] now due to the fact they are issues . . . beyond [Plaintiff's] control and are problems that were created by the defendants." (ECF No. 135 at 2.) Plaintiff reiterated that he is trying to obtain an AOM but finding it very difficult to do so from Nigeria, and he submitted that it would be a "manifest injustice" to dismiss his case for lack of such an affidavit when "defendants [we]re

---

[1]  A *Ferreira* conference is a state-court procedure that calls for a case management conference to remind the parties of the requirements of the AOM statute and to permit defendants to raise any objections they have to the sufficiency of a plaintiff's AOM. Such conferences are not held in federal court. *See White v. Willingboro Twp.*, Civ. No. 18-10964, 2020 WL 3604091, at *5 (D.N.J. July 2, 2020) ("[A] *Ferreira* conference is procedural, rather than substantive, state law, meaning that such conferences are not held in federal court."); *accord Kadonsky v. Ahsan*, 782 F. App'x 87, 90 n.2 (3d Cir. 2019) ("We have recognized, however, that a *Ferreira* conference is not a substantive requirement.").

aware [it] would be hard or even impossible for plaintiff to" obtain an AOM "while in Nigeria especially since most doctors will not sign such a document without seeing the patient in question and also based on the fact that most experts [Plaintiff] has reached out to . . . have asked to see him in person." (*Id.* at 3-4.)

In subsequent correspondence dated June 12, 2023, Plaintiff stated that "he is still actively looking for medical professionals to draft [his] affidavit of merit," but that Plaintiff's younger brother "who is a licensed medical doctor" has stated that "it would be unethical for any doctor to sign an affidavit of merit without seeing the patient" and "that the proper and fair thing to occur in this matter is for [Plaintiff] to be allowed to return to the United States to have access to New Jersey licensed doctors." (ECF No. 138 at 3-4.)

In correspondence dated June 14, 2023, the USA objected to the suggestion that Plaintiff be allowed to return to the United States to obtain an AOM. (ECF No. 139.) It wrote that Plaintiff was "deported pursuant to a valid removal order on August 18, 2020," and as a result, "Plaintiff is inadmissible to the United States for a period of ten years." (*Id.* at 1.) It also argued that "there is no basis to credit Plaintiff's allegation that he cannot properly litigate this case from his present location, especially as virtual depositions and electronic document production have become common practice." (*Id.* at 2.)

Due to the parties' ongoing correspondence, the Magistrate Judge has set a telephonic conference for July 20, 2023, to discuss open issues and the status of the matter. (ECF No. 142.) In the interim, the Court now addresses Plaintiff's pending motion that asks the Court to find that Plaintiff does not need to provide an AOM.

4

## II.   DISCUSSION

When a plaintiff, as here, brings FTCA claims against the United States, state law governs. *See Fontanez v. United States*, 24 F. Supp. 3d 408, 411 (D.N.J. 2014) ("[S]tate law governs claims under the FTCA."). Because Plaintiff's injuries in this case arise from alleged actions that agents of the United States took against Plaintiff while he was in custody in New Jersey prior to his removal, New Jersey law applies, including application of the State's Affidavit of Merit statute. *Id.* ("Because Plaintiff alleges injuries which occurred in New Jersey, New Jersey tort law, including the affidavit of merit statute . . . applies." (citations omitted)); *see also Snyder v. Pascack Valley Hosp.*, 303 F.3d 271, 273 (3d Cir. 2002) ("[A]pplication of [the AOM] statute does not conflict with the Federal Rules of Civil Procedure and hence is enforceable in the district courts when New Jersey law applies.").

New Jersey's AOM statute was "enacted as part of a tort reform package designed to 'strike[] a fair balance between preserving a person's right to sue and controlling nuisance suits,'" and it "requires plaintiffs in professional negligence actions 'to provide an affidavit from an appropriate licensed professional attesting to the merit of plaintiffs' claims." *Haviland v. Lourdes Med. Ctr. of Burlington Cnty., Inc.*, 250 N.J. 368, 376 (2022) (quoting *Palanque v. Lambert-Woolley*, 168 N.J. 398, 403 (2001)). If a plaintiff fails to provide such an affidavit, "it shall be deemed a failure to state a cause of action." N.J. Stat. Ann. § 2A:53A-29; *see also Horne v. United States*, 223 F. App'x 154, 156 (3d Cir. 2007) (holding that summary judgment was properly entered against incarcerated *pro se* plaintiff bringing suit under the Federal Tort Claims Act due to plaintiff's failure to comply with New Jersey's AOM statute).

"[B]y enacting the AOM statute, the [New Jersey] Legislature did not intend to 'create a minefield of hyper-technicalities in order to doom innocent litigants possessing meritorious

claims.'" *Haviland*, 250 N.J. at 378 (quoting *Ferreira v. Rancocas Orthopedic Assocs.*, 178 N.J. 144, 150 (2003)). The New Jersey Supreme Court has "therefore fashioned two equitable remedies to 'temper the draconian results of an inflexible application of the statute.' First, 'a complaint will not be dismissed if the plaintiff can show that he has substantially complied with the [AOM] statute.' Second, 'a complaint will be dismissed without prejudice if there are extraordinary circumstances to explain noncompliance.'" *Id.*

Specifically, the AOM statute sets forth that

> [i]n any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.
>
> [N.J. Stat. Ann. § 2A:53A-27.]

"The [AOM] statute explicitly limits the term 'licensed person' to" certain positions, *see* N.J. Stat. Ann. § 2A:53A-26, as well as to a health care facility, "whether public or private, that is engaged principally in providing services for health maintenance organizations, diagnosis, or treatment of human disease, pain, injury, deformity, or physical condition, including, but not limited to, a general hospital." *Haviland*, 250 N.J. at 377 (quoting N.J. Stat. Ann. § 26:2H-2(a)).

Based on the statute's express provisions, New Jersey's courts have recognized that not all those engaged in medical services are covered by the AOM statute. *See, e.g., Gilligan v. Junod*, 474 N.J. Super. 39 (App. Div. 2022) (holding that a licensed practical nurse, unlike "a registered professional nurse," is not a "licensed person" as defined in the AOM statute and that plaintiff did

not need to file an AOM to pursue professional-negligence claims against the nurse or vicarious liability claim against the medical practice); *Est. of Bowser v. Atl. Cnty.*, Civ. No. 18-5606, 2019 WL 1277515, at *3 (D.N.J. Mar. 20, 2019) ("The AOM Statute does not include psychologists within its list of 'licensed persons' and in turn, does not require an AOM for suits against such professionals or claims arising from their actions."). Likewise, as Plaintiff underscores in his motion papers, a plaintiff does not need to provide an AOM to prosecute a malpractice claim against a licensed health care facility where the claim is based on vicarious liability stemming from the actions of non-"licensed persons."

Notably, in *Haviland*, the plaintiff alleged that a radiology technician had negligently performed a post-surgery imaging exam resulting in injury to plaintiff's shoulder that eventually required surgery, and the plaintiff brought suit against a hospital under the theory of vicarious liability for the technician's actions. 250 N.J. at 373. The New Jersey Supreme Court held that the plaintiff did not need to serve an AOM for his claim against the hospital because the alleged malpractice was committed by a radiology technician who is not a "licensed person" under N.J. Stat. Ann. § 2A:53A-26. *Id.* at 383-84. In so holding, the *Haviland* Court emphasized that "an AOM is needed to maintain claims of vicarious liability against unlicensed entities premised on the alleged professional negligence of their licensed employees" but not to pursue claims of vicarious liability against licensed entities for the alleged negligence of their non-licensed employees. *Id.* at 381.

Similarly, in *McCormick v. State* (a precursor to *Haviland*), a prisoner sued the State of New Jersey alleging negligent treatment by prison medical staff. 446 N.J. Super. 603, 609 (App. Div. 2016). Although the plaintiff argued he was not required to serve an AOM on the State because it was "literally not a 'licensed person'" under the AOM statute, the Appellate Division

concluded that an AOM is "required when the plaintiff's claim of vicarious liability hinges upon allegations of deviation from professional standards of care by licensed individuals" employed by the State, including "doctors, nurses, therapists, counselors, engineers, and . . . other licensees encompassed within the broad sweep of the AOM statute." *Id.* at 611-15.  If those professionals "engage in harmful conduct that deviates from the standards of care of their respective fields of licensure, and a plaintiff claims that the defendant public entity is liable for that harm under agency principles, then an AOM from an appropriate qualified person is necessary to support the lawsuit." *Id.* at 613.

In the present case, Plaintiff asserts two claims under the FTCA against the USA based on the theory of vicarious liability/agency principles.  In Count V, Plaintiff alleges that on or about December 9, 2019, "[f]ederal law enforcement officers attempted to forcibly place Plaintiff on a plane leaving the country" and that "Plaintiff sustained injuries to his neck and spine as a result of the officers' deliberate use of force." (ECF No. 81 ¶¶ 127-28.)  Plaintiff also alleges that "[f]ederal law enforcement officers [attempted] to forcibly place Plaintiff on a plane leaving the country in or about August 2020," and "Plaintiff suffered injuries including to his groin as a result of the . . . use of force." (*Id.* ¶¶ 130-31.)

Based on these allegations in Count V, it does not appear that Plaintiff needs to provide an AOM to pursue that FTCA claim against the USA.  The United States itself is a public entity, and such a public entity does not appear to qualify as a "licensed person" or a "healthcare facility" as defined in New Jersey's AOM statute.  *See McCormick*, 446 N.J. Super. at 611 ("Nor does the State meet the statute's definition of a 'health care facility' because it is not 'engaged principally' in health care.").  And federal law enforcement officers do not appear to fit within any of the definitions of "licensed person" under the statute.  *See* N.J. Stat. Ann. § 2A:53A-26.  As a result,

8

an AOM is not required for Plaintiff to maintain Count V of his Fourth Amended Complaint against the USA for the alleged actions of federal law enforcement officers. *See Haviland*, 250 N.J. at 383-84 ("We hold that the AOM statute does not require submission of an AOM to maintain a vicarious liability claim . . . based on the conduct of . . . non-licensed agents or employees.").

In Count VI, Plaintiff claims that the USA owed him "a standard of medical care to assess his need for treatment and to treat his serious medical needs" and that it "deviated from that standard . . . by denying Plaintiff assessment or treatments of his needs, as described in th[e] Complaint." (ECF No. 81 ¶¶ 135-36.) In the Complaint, Plaintiff alleges that in 2013 he had "experienced pronounced suffering from pain in his jaw" and that he was advised that "he would have to undergo corrective jaw surgery." (*Id.* ¶¶ 30-32.) To complete the surgery, Plaintiff needed the electronic monitoring anklet removed but ICE failed to take the necessary action and, as a result, Plaintiff "was denied corrective surgery to his jaw and continued to experience the severe pain and suffering he was dealing with and is still dealing with until the present day." (*Id.* ¶¶ 33-43.) Plaintiff also alleges that, in December 2019, he was placed in the Essex County Correctional Facility as a pre-trial detainee, where he "began suffering from reoccurring painful cysts on his face and body" and that he was in "the medical tier" and a nurse at the facility noted "an open wound on his face." (*Id.* ¶¶ 54, 60-62.) Plaintiff further alleges that, in February 2020, two ICE agents instructed the facility to place Plaintiff "in solitary confinement, in contravention of his medical needs" and that he was "often not allowed to shower for days." (*Id.* ¶¶ 67, 74.) When Plaintiff was moved to medical solitary confinement during the COVID-19 pandemic, "[h]is request for a new neck brace was denied." (*Id.* ¶ 77.) Plaintiff makes other general allegations related to his "worsening health" while in detention and that he "never received proper medical care for any of his health needs." (*Id.* ¶¶ 84-92.)

Based on these allegations, the Court is not currently able to determine whether an AOM is required for part or all of the alleged actions/inactions that are encompassed by Count VI of Plaintiff's Complaint. To the extent the alleged neglect or deviation from the proper standard of medical care was a result of the actions/inactions of "licensed persons" as defined in New Jersey's AOM statute, *see* N.J. Stat. Ann. § 2A:53A-26, Plaintiff would need an AOM naming the specific individuals unless some other exception applies.[2] *See Hicks v. Lourdes Health Servs., Inc.*, Civ. No. 18-15256, 2020 WL 614487, at *5 (D.N.J. Feb. 10, 2020) ("The New Jersey Supreme Court requires that an affidavit of merit explicitly name the agents or representatives whose negligence forms the basis of the institution's lability." (citing *Fink v. Thompson*, 167 N.J. 551, 558 (2001)). To the extent the alleged neglect or deviation from the proper standard of care was a result of the actions or inactions of persons who are not covered by the AOM statute, then no AOM would be required.[3] *See Haviland*, 250 N.J. at 383-84. Rather than decide this issue only on the pleading, the Court will reserve on the question until it is presented with a fuller factual record.

---

[2]     For example, one exception that could be invoked is the common-knowledge exception if appropriate. *See Est. of Lewis v. Cumberland Cnty.*, Civ. No. 16-3503, 2018 WL 1317853, at *6-7 (D.N.J. Mar. 14, 2018) ("AOMs are 'not required in common knowledge cases,' where 'jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of specialized knowledge or experts.' . . . It strikes the Court as premature, at this relatively early stage of the case, to state that Plaintiff will not be able to establish a claim that *would* be subject to the common-knowledge exception with the aid of discovery practice and further development of the factual record, to the extent that such a claim is pled . . . , and it is with that in mind that the Court denies in part [defendant's] motion." (citations omitted)); *Lee v. Park*, Civ. No. 12-07437, 2013 WL 5770680, at *4 (D.N.J. Oct. 23, 2013) ("In a medical malpractice case, the common knowledge exception applies when 'the issue of negligence is not related to technical matters peculiarly within the knowledge of medical . . . practitioners.'" (quoting *Sanzari v. Rosenfeld*, 34 N.J. 128, 142 (1961)).

[3]     Even if an AOM is not required now, to ultimately prevail at trial, Plaintiff will need to introduce expert testimony about the standard of care and how Defendant(s) deviated. *See Gilligan v. Junod*, 474 N.J. Super. 39, 48 (App. Div. 2022) ("[A]lthough plaintiff can pursue his claims without submitting an AOM, he still must demonstrate that [defendant] was professionally negligent. . . . [P]laintiff will be required to present expert testimony to establish the applicable

Nevertheless, considering the circumstances of this case, and to permit Plaintiff the opportunity to continue to try to obtain an AOM and to decide how he wishes to proceed, the Court will grant Plaintiff an additional thirty-day extension to the AOM deadline beyond the 120 days envisioned by the statute.

In *Fontanez*, a *pro se* plaintiff, who had been incarcerated and brought FTCA claims stemming from his incarceration, moved for an extension of time within which to serve an AOM. 24 F. Supp. 3d 408. Unlike the present case, the plaintiff's motion in *Fontanez* had been filed *after* the 120-day statutory period had expired. *Id.* at 411 ("[T]he Court accordingly granted the motion, extending the time within which to file an affidavit to October 9, 2013, the statutory limit under New Jersey's affidavit of merit statute. Plaintiff filed the pending motion on October 24, 2013."). The district court granted the plaintiff's extension request, finding that "extraordinary circumstances" warranted equitable relief from the 120-day time limitation. *Id.* at 413-14. Noting that courts "engage[] in a fact-specific analysis," the court underscored that the plaintiff's incarceration and "limited resources" had required him to rely on family for assistance and that, "notwithstanding significant efforts, he could not retain a medical provider in time to comply." *Id.* at 414. Finding that the plaintiff had not been careless or lacked diligence, the court in *Fontanez* determined that the plaintiff's efforts and the "cumulative impact of Plaintiff's circumstances – particularly when viewed through the lens of Plaintiff's efforts during the sixty-day extension – support[ed] a limited extension of time." *Id.* at 417; *see also Tischler v. Watts*, 177 N.J. 243, 247 (2003) ("It would be counter to the fundamental purpose of the Affidavit of Merit Statute to dismiss this case with prejudice when such compelling circumstances exist and when the underlying case

---

standard of care, a deviation from that standard, and that the deviation proximately caused plaintiff's injuries.").

11

may be a meritorious lawsuit that, except for those circumstances, would have been timely filed.").

Here, too, the Court finds that Plaintiff's efforts and the cumulative circumstances of this case rise to the extraordinary level that warrant a limited extension of time to permit Plaintiff a further opportunity to comply with the AOM statute. Within a week of the USA's answer demanding an AOM, Plaintiff wrote to request a 60-day extension, explaining that he needed the extra time "due to the fact he isn't physically in the United States and would have to coordinate with people in the U.S. to get a specialist that has knowledge of [his] different health issues and specialize in the aspects that have bearing to this case." (ECF No. 131 (cleaned up).) Since the extension has been granted, Plaintiff has submitted correspondence on several occasions detailing his ongoing efforts and struggles in obtaining an AOM, including that most of the experts he has reached out to have stated that they would want to examine Plaintiff in person and that they would want the request to come from an attorney instead of a *pro se* plaintiff proceeding *in forma pauperis*. (ECF No. 133 at 6; ECF No. 135 at 2-3; ECF No. 138 at 3-4.) Because Plaintiff was removed from the United States to Nigeria, he does not have the ability to return to the United States to obtain an AOM, which no doubt complicates his efforts because New Jersey's statute requires, among other things, that the "person executing the affidavit shall be licensed in this or any other state." N.J. Stat. Ann. § 2A:53A-27.

Based on this record, the Court finds that Plaintiff has established that any delay on his part has not been due to either carelessness, lack of circumspection, lack of diligence, or ignorance of the law and, instead, Plaintiff's status as a *pro se*, indigent, foreign national trying his best to comply with a state-specific requirement from overseas following his removal persuades the Court that he should be given a limited extension of time. Therefore, for the reasons set forth above, and other good cause shown,

**IT IS** on this 17th day of July, 2023, **ORDERED** as follows:

1. Plaintiffs' Emergency Motion (*see* ECF No. 133) is **GRANTED** in part and **DENIED** in part.

2. The Court finds that Plaintiff is not required to provide an Affidavit of Merit to pursue Count V (Federal Tort Claims Act) of his Fourth Amended Complaint against Defendant The United States of America based on the alleged actions of federal law enforcement officers.

3. The Court does not now decide whether Plaintiff is required to provide an Affidavit of Merit to pursue Count VI (Federal Tort Claims Act) of his Fourth Amended Complaint against Defendant The United States of America. It reserves on this question.

4. For the reasons set forth above, the Court finds extraordinary circumstances to warrant granting Plaintiff the equitable relief of a thirty-day extension of time within which to serve an Affidavit of Merit. The AOM deadline is August 24, 2023. No further extensions of time will be granted.

5. The Clerk is directed to terminate the motion pending at ECF No. 133.

                                                                         _____
                                                                         GEORGETTE CASTNER
                                                                         UNITED STATES DISTRICT JUDGE