**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| AKINTOYE LAOYE, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 14-5195 (GC) (DEA) |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, et al., | : | **OPINION** |
| | : | |
| Defendants. | : | |
| | : | |

**CASTNER, District Judge**

### I.      INTRODUCTION

Plaintiff, Akintoye Laoye ("Plaintiff" or "Laoye"), is proceeding with a Fourth Amended Complaint ("FAC").  Previously, this Court analyzed Defendants' Motion to Dismiss and granted it in part.  *See Laoye v. United States*, No. 14-5195, 2023 WL 2263670 (D.N.J. Feb. 28, 2023). Most relevant to this Opinion, this Court granted Defendants' Motion to Dismiss Counts I-IV of the FAC.  *See id.*  Presently pending before this Court is Plaintiff's Motion for Reconsideration of this Court's Opinion and Order that dismissed Counts I-IV of his FAC against Immigration & Customs Enforcement ("ICE") officers as well as John Doe ICE officers.  (*See* ECF 125).  For the following reasons, Plaintiff's Motion for Reconsideration is denied.

### II.      FACTUAL AND PROCEDURAL BACKGROUND

This Court previously outlined the factual allegations of Plaintiff's FAC as follows:

> Plaintiff was a resident of the United States, but now resides in Nigeria.  He names the following as Defendants in this action:
>
>    1. United States of America
>    2. ICE
>    3. Paul Silva – Deportation Officer

4. Joseph Mazza – Deportation Officer
5. Milena Mioduszewka – Deportation Officer
6. Hathawn – Deportation Officer
7. Jane and John Doe agents of ICE
8. Jane and John Doe members of ICE Health Service Corps
9. Essex County
10. Jane and John Doe members of Essex County
11. Essex County Correctional Facility Medical Staff

The following allegations are taken from Plaintiff's FAC and are taken as true for purposes of this Opinion. (*See* ECF 81). Plaintiff entered the United States in 1996 as a J-2 non-immigration exchange visitor. (*See id.* ¶ 14). In 1998, Plaintiff adjusted his status to a F-1 non-immigrant when he began college. (*See id.* ¶ 15). In 2003, Plaintiff was convicted of endangering the life of a child in violation of N.J. Stat. Ann. § 2C:24-2(a). (*See* ECF 81 ¶ 16). Plaintiff was then charged with removability based on this conviction in 2004. (*See id.* ¶ 17). He was in ICE detention from February 2004 thru July 2006. (*See id.* ¶ 18). Subsequently, the Department of Homeland Security ("DHS") brought new removal charges against Plaintiff alleging he failed to maintain his F-1 student status. (*See id.* ¶ 20). In September 2007, an immigration judge found Plaintiff removeable as an "out of status" F-1 student. (*See id.* ¶ 21). In February 2008, the immigration judge denied voluntary departure and ordered Plaintiff to be deported to Nigeria. (*See id.* ¶ 22).

On January 31, 2010, Plaintiff was attacked on a public street by an off-duty police officer in Neptune, New Jersey. (*See id.* ¶ 23). He sustained a broken jaw which required a metal plate to be inserted. (*See id.*). Plaintiff states he suffers from Post-Traumatic Stress Disorder ("PTSD"), anxiety and depression as a result of this incident. (*See id.* ¶ 24). Plaintiff then applied for a U non-immigrant visa as a victim of a violent crime. (*See id.* ¶ 25). While that was pending, he was detained at the Monmouth County Jail, Essex County Correctional Facility ("ECCF") and Hudson County Jail during 2011 to 2012. (*See id.* ¶ 26).

On or about June 25, 2012, Plaintiff was ordered removed after his U-visa application was denied. (*See id.* ¶ 27). However, because ICE failed to effectuate Plaintiff's deportation during the period described by law, he was instead placed under supervision. (*See id.*). Plaintiff's supervision order required him to wear an electronic monitoring device on his ankle and participate in the Immigration Supervision Appearance Program ("ISAP"). (*See id.*). Plaintiff reported weekly to the ISAP Office for six years. (*See id.* ¶ 28).

2

Plaintiff suffered from panic attacks during his reporting appointments due to his PTSD from prior experiences with police officers. (*See id.* ¶ 29).

In 2013, Plaintiff suffered from pain in his jaw. (*See id.* ¶ 30). Plaintiff's primary care physician informed him that there was a defect in the plate in his jaw that was causing the pain. (*See id.* ¶ 31). Plaintiff was then subsequently advised he would have to undergo corrective jaw surgery that would require the removal of the electronic monitoring device on Plaintiff's ankle. (*See id.* ¶¶ 32-33).

Plaintiff informed his case worker at the ISAP Office that he would need the monitoring device removed for surgery. (*See id.* ¶ 34). The case worker informed Plaintiff he would need to instruct his deportation officer, which Plaintiff did. (*See id.* ¶ 35). The deportation officer then requested Plaintiff's doctor write a letter to memorialize the need for the monitoring device to be removed. (*See id.* ¶ 36). Plaintiff's doctor did so on or about January 13, 2014. (*See id.* ¶ 37). However, the ICE officer requested a letter with more information which was done on January 20, 2014. (*See id.* ¶¶ 38-39).

Plaintiff then applied for and was granted financing from the Victims Compensation Office to pay for the surgery. (*See id.* ¶ 41). On February 11, 2014, the day of the scheduled surgery, Plaintiff reported to BI Incorporated to remove the electronic monitoring device. (*See id.* ¶ 42). However, Plaintiff was told that the office had not received a response from ICE regarding removing the electronic monitoring device. (*See id.*). Thus, Plaintiff was denied corrective jaw surgery and continued to experience pain and suffering which he does to the present day. (*See id.* ¶ 43).

In August 2014, Plaintiff states he filed a *pro se* complaint in this Court because ICE had failed to respond to his requests to remove the electronic monitoring device for the surgery. (*See id.* ¶ 44). In 2019, Silva advised Plaintiff he would be allowed to undergo the jaw surgery. (*See id.* ¶ 46). Plaintiff then reapplied to the Victims Compensation Office for approval for payment of the surgery. (*See id.* ¶ 47). While Plaintiff was waiting for a response to his inquiry for funding, Silva informed Plaintiff that ICE had decided not to allow him to undergo the surgery because of the delay. (*See id.* ¶ 48).

On December 6, 2019, Plaintiff was detained by ten ICE agents on aggravated felony grounds. (*See id.* ¶ 49). Plaintiff's pleas to the

agents to not rush into his home for fear that the agents would aggravate his father who suffers from dementia went ignored. (*See id.* ¶ 51). During this December 6, 2019 detention, ICE agents joked that Silva "owed them big." (*See id.* ¶ 52). Plaintiff's father became upset during this incident. (*See id.* ¶ 53). Plaintiff sought permission unsuccessfully from the ICE agents to let Plaintiff turn himself in the next day so he could arrange for care for his father. (*See id.*).

Subsequently, on December 6, 2019, Plaintiff was placed in ECCF as a pre-trial detainee. (*See id.* ¶ 54). The same day he sought an emergency motion to cease and desist. (*See id.* ¶ 55). On December 9, 2019, four ICE agents attempted to place Plaintiff on a plane with the use of a document that erroneously stated that Plaintiff was ordered to be removed on aggravated felony grounds when Plaintiff only had an out-of-status charge. (*See id.* ¶ 56). The ICE agents though refused to read Plaintiff's emergency motion, calling it "trash." (*See id.* ¶ 57). Plaintiff sustained injuries to his neck and spine, suffered from an aggravated inguinal hernia, lost feeling in three fingers and suffered from worsening symptoms of his PTSD, anxiety and depression. (*See id.* ¶ 58).

On January 20, 2020, an ICE agent served Plaintiff with Warning for Failing to Depart that erroneously stated Plaintiff was ordered to be removed on aggravated felony grounds. (*See id.* ¶ 59). When Plaintiff told the agent he did not have any aggravated felony grounds, the agent told Plaintiff that he "was definitely an aggravated felon and nothing could change that." (*Id.*).

During this time of detention at ECCF, Plaintiff suffered from cysts to his body and face. (*See id.* ¶ 60). In February 2020, Plaintiff was moved from the medical tier at ECCF by Silva and ICE agents. (*See id.* ¶ 61). Silva and other ICE agents again tried to force Plaintiff onto a plane leaving the United States. (*See id.*). Whereupon, a nurse at ECCF informed Silva and ICE agents Plaintiff had an open wound on his face, but the agents said, Plaintiff is going to leave "the United States today no matter what." (*See id.* ¶ 62). Plaintiff protested this treatment stating he had an emergency stay of removal. (*See id.* ¶ 63). In a call to Plaintiff's mother from the plane, Silva threatened to make sure that Plaintiff was imprisoned when he arrived in Nigeria. (*See id.* ¶ 64). Plaintiff alleges four ICE agents threatened him with five years of federal jail time and filmed the attempt to force Plaintiff onto the plane. (*See id.* ¶ 65). However, Plaintiff was returned to ECCF after another officer verified that Plaintiff had an emergency stay of removal. (*See id.* ¶ 66).

In February 2020, Silva and another ICE agent instructed that Plaintiff be placed in solitary confinement in contravention of his medical needs. (*See id.* ¶ 67). Plaintiff further alleges that Silv[a] and other ICE agents commented to ECCF Officers "[c]an you believe this child molester thinks he's not an aggravated felon? Maybe his fellow detainees need to know what he's being held for." (*See id.* ¶ 68). Silva and the ICE agents ordered Plaintiff be placed in solitary confinement indefinitely and not be given law library access. (*See id.* ¶ 69). Silva told Plaintiff he would be back to pick him up after the stay was lifted. (*See id.* ¶ 70).

During his detainment at ECCF, ICE agents and ECCF officers told other detainees and inmates that Plaintiff was a federal informant and child molester. (*See id.* ¶ 71). At one point, Plaintiff states an Essex County sergeant entered Plaintiff's cell with other officers and ordered Plaintiff to remove his pants and had other officers take pictures of his genitals. (*See id.* ¶ 72). When Plaintiff claimed he told the officers he would report their behavior to ICE, an officer responded to Plaintiff, "[w]ho do you think ordered us to keep you locked up? This is just the beginning." (*See id.* ¶ 73). Plaintiff was further threatened by ECCF officers who told him that by the time ECCF officers were done with him, he would know how it felt to be abused and molested. (*See id.*).

During Plaintiff's time in solitary confinement, he was denied shower shoes after being purportedly told by an unknown officer that "Africans don't wear shoes." (*See id.* ¶ 76). Thus, Plaintiff stood on a garbage bag in the shower even though at the time he was experiencing involuntary spams and balance issues. (*See id.*).

During the COVID-19 pandemic, Plaintiff left his neck brace behind when he was moved to medical solitary confinement. (*See id.* ¶ 77). Plaintiff's requests for a new neck brace were denied. (*See id.*). On one other occasion, Plaintiff was served a meal consisting only of asparagus and bread. (*See id.* ¶ 78). The officer who served him laughed and said "[e]njoy your meal, you child molester. Let's see how you snitch on an empty stomach." (*See id.*).

Plaintiff states that ICE, ECCF and Essex County were aware or should have been aware that Plaintiff's medical needs were not being properly addressed. (*See id.* ¶ 79). Plaintiff suffered injuries which included worsening mental health, exacerbated PTSD, anxiety, depression, insomnia, neck pain, involuntary body spasms, loss of feeling in three fingers, jaw infections and a worsening inguinal hernia. (*See id.* ¶ 85).

On July 17, 2020, Plaintiff was served with a Warning for Failing to Depart which erroneously stated that Plaintiff was ordered removed in 2012 on aggravated felony grounds. (*See id.* ¶ 86). Plaintiff informed agents this was incorrect, but the only response Plaintiff got from an agent was that he had been "warned" about Plaintiff. (*See id.*).

In August 2020, Plaintiff was woken up as ICE agents told him to pack up. (*See id.* ¶ 87). Plaintiff was physically restrained and forced into a vehicle that drove him to a plane bound for Louisiana. (*See id.* ¶ 88). Upon arriving in Louisiana, Plaintiff made medical requests as his hernia was causing him pain. (*See id.* ¶ 91).

Plaintiff was shackled while in a wheelchair and placed on a second plan bound for Nigeria. (*See id.* ¶ 93). While on the plane, Plaintiff was given stool softeners as treatment, which caused him to soil himself. (*See id.* ¶ 94). Plaintiff states this treatment and events occurred as the result of the orders of Silva, Mazza, Mioduszewka and Hathawn. (*See id.* ¶ 95).

Plaintiff's FAC was filed by limited appointment pro bono counsel. It raises six causes of action; they are:

> 1. Excessive Use of Force (Count I);
> 2. Deliberate Indifference to Plaintiff's Serious Medical Needs (Count II);
> 3. Harsh Pretrial Conditions For Punitive and Retaliatory Purposes (Count III);
> 4. Equal Protection Violations (Count IV);
> 5. Federal Tort Claims Act ("FTCA") against the United States – related to the December 9, 2019 and August 2020 plane incidents (Count V); and
> 6. FTCA against the United States for deviating from the standard of medical care (Count VI).

*Laoye*, 2023 WL 2263670, at \*1–4.

Defendants moved to dismiss the FAC. (*See* ECF 106). Most relevant here, this Court determined that Plaintiff could not move forward on Counts I-IV against the individually named and John Doe ICE officers because *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) should not be extended to Plaintiff's claims in Counts I-IV against them. *See Laoye*, 2023 WL 2263670, at \*6-8. Most notably, this Court found the analysis in *Barry*

*v. Zamar*, No. 19-10216, 2022 WL 4774398 (D.N.J. Oct. 3, 2022) persuasive in determining that *Bivens* should not be extended to allow Plaintiff to pursue those claims against the individually named and John Doe ICE officers. *See Laoye*, 2023 WL 2263670, at 7-8.

Plaintiff has filed a Motion for Reconsideration. (*See* ECF 125). Plaintiff asserts that he is entitled to bring claims against the individually named and John Doe ICE officers in Counts I-IV because he is pursuing his claims under the Fifth Amendment Due Process Clause as well as his protections afforded him to be free from cruel and unusual punishment. Defendants oppose Plaintiff's Motion for Reconsideration. (*See* ECF 128). Plaintiff subsequently filed a Reply in Support of his Motion for Reconsideration. (*See* ECF 129).

## III.    LEGAL STANDARD

Local Civil Rule 7.1 allows a party to seek a motion for re-argument or reconsideration of "matter[s] or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked. . . . ." Local Civ. R. 7.1(i). Whether to grant a motion for reconsideration is a matter within the Court's discretion, but it should only be granted where such facts or legal authority were indeed presented but overlooked. *See DeLong v. Raymond Int't Inc.*, 622 F.2d 1135, 1140 (3d Cir. 1980), *overruled on other grounds by Croker v. Boeing Co.*, 662 F.2d 975 (3d Cir. 1981); *see also Williams v. Sullivan*, 818 F. Supp. 92, 93 (D.N.J. 1993). To prevail on a motion for reconsideration, the movant must show: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court . . . [rendered the judgment in question]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *U.S. ex rel. Shumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 848-49 (3d Cir. 2014) (citing *Max's Seafood Cafe ex rel. Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). The standard of review involved in a motion for reconsideration is high and relief is to be granted

sparingly.  *See United States v. Jones*, 158 F.R.D. 309, 314 (D.N.J. 1994).  Mere disagreement with the Court's decision is not a basis for reconsideration.  *See United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999).

## IV.    DISCUSSION

Plaintiff's Motion for Reconsideration does not state an intervening change in controlling law nor does it state new evidence that was not available when this Court previously entered its February 28, 2023 Opinion and Order dismissing Counts I-IV of Plaintiff's FAC.  Instead, Plaintiff states his disagreement with this Court's dismissal of Counts I-IV of the FAC against the individually named and John Doe ICE Defendants because he claims *Bivens* applies in this context against these Defendants.

As described above though, mere disagreement with this Court's Opinion is insufficient in and of itself to warrant granting a party's motion for reconsideration.  While Plaintiff alludes to the fact that the United States Supreme Court has allowed for certain claims to proceed through the *Bivens* prism, Plaintiff fails to recognize that "[a]lthough *Bivens* remedies have been approved in the past in certain Fourth and Fifth Amendment contexts, these claims are not to be extended to "other classes of defendants facing liability" without undertaking a special factors analysis."  *See Medina v. Danaher*, 445 F. Supp. 3d 1367, 1372 (D. Colo. 2020) (citing *Vanderklok v. United States*, 868 F.3d 189, 200 (3d Cir. 2017); *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020)).  That is precisely the analysis this Court engaged in first determining that Plaintiff's claims present a new *Bivens* context and ultimately finding *Barry*'s reasoning persuasive such that special factors warranted declining opening the door to *Bivens* liability against the individually named and John Does ICE Defendants in this case in Counts I-IV. *See Laoye*, 2023 WL 2263670, at *7-8. Accordingly, Plaintiff fails to establish that his Motion has merit such that it will be denied.

V.    **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Reconsideration (ECF 125) is denied.  An

appropriate Order will be entered.


DATED: July 18, 2023                                    s/ Georgette Castner
                                                        GEORGETTE CASTNER
                                                        United States District Judge